## State *vs.* Savino Di Guglielmo.

*Criminal Law—Assault with Intent to Commit Murder—Murder—*
*Malice—Intent; how Shown—Intoxication; When and how*
*to be Considered—Where Intent is Material—Evidence.*

1.   To constitute the statutory offense of assault with intent to commit murder, the circumstances must be such as to show that it would have been murder if the assailant had accomplished such intent.

2.   Assault, the different degrees of murder, and malice, express or implied, defined.

3.   The intent to commit murder may be shown by direct evidence of the intent, that is, by the confession or declaration of the accused ; or, if there be no such direct evidence, the intent may be proved by the acts or conduct of the accused, and other circumstances.

4.   It is an established rule of law that every person of the age of 14 years and upwards is presumed to be mentally capable of committing crime until the contrary is proven; and the burden is upon the accused, after he has reached such age, to prove that he is not mentally capable of committing the crime charged.

5.   Although voluntary intoxication constitutes neither excuse for nor palliation of crime, yet in cases in which a specific or particular intent or purpose is an essential or constituent element of the offense, intoxication, even though voluntary, becomes a matter for consideration, and is competent evidence on the question whether, by reason thereof, the defendant was incapable of forming or entertaining such an intent or purpose at the time the act was perpetrated.   Evidence of intoxication, however, should always be received with great caution, and carefully examined, in connection with the other proven circumstances.

6.   A person who is intoxicated may be capable of premeditation and deliberation, and a drunken man who commits a wrongful act wilfully and premeditatedly is as guilty in the eyes of the law as if he had been sober.   If a person resolves to commit a crime and then drinks to intoxication and commits the act, the fact of intoxication cannot lessen the degree of the offense, because he  specifically intended to  commit it. When the specific intent is a necessary ingredient of the crime, so long as the defendant is capable of conceiving and entertaining the design, he must be presumed, in the absence of proof to the contrary, to have intended the natural and probable consequences of his act.

7.   Reasonable doubt defined.

(*May 21, 1903.*)

Lore, C. J., and Grubb, J., sitting.

*Herbert H. Ward,* Attorney-General, for the State.

*Sylvester D. Townsemd, Jr.,* for the defendant.

Court of General Sessions, New Castle County, May Term, 1903.

The prisoner was indicted at this term for an assault with intent to murder his wife, Marie G. Di Guglielmo, on April 14, 1903, in the night time.

At the trial the evidence showed that the defendant, on the day in question, had been drinking heavily from about ten o'clock in the morning, and, while in a more or less intoxicated condition, came into his wife's bed-room at his home No. 103 Shipley street, in the city of Wilmington, and after a few moments' conversation with her went into the kitchen adjoining, secured a butcher knife, returned with the same to the bed-room, and made an attack upon his wife with the said knife, while she was lying in bed, inflicting nine wounds upon her head, arms and leg; that their son Michael, who was asleep in an adjoining room, was aroused by the screams of his mother, ran into the room and succeeded in getting the knife away from his father; that the mother then escaped from the room, the police were summoned and the prisoner placed under arrest.

Defendant's counsel asked the Court to instruct the jury, *inter alia,* as follows:

*First*—That it is as incumbent upon the State to prove, beyond a reasonable doubt, the intent to commit murder as it is that it prove the assault.

*Second.*—That the Court instruct the jury as to what constitutes a reasonable doubt and that such doubt should inure to the benefit of the prisoner.

*Third.*—That the jury could only consider the act and intent and are not to be influenced by the extent of the injuries.

*Fourth.*—That drunkenness is no excuse for an assault, but if the defendant is charged with an intent accompanying an assault, the intent could not exist if he was too drunk to entertain it, and the wrongful act does not supply or aid the proof of the intent to kill.

GRUBB, J., charging the jury :

Gentlemen of the jury :—This indictment charges Savino Di Guglielmo with an assault with intent to murder Marie G. Di Guglielmo, his wife, the prosecuting witness.

Under this indictment you may find the prisoner guilty either of the assault with intent to murder, or of the simple assault merely, or not guilty of either, according as the law and the evidence may warrant your verdict.

In order to warrant you in finding that he is guilty in manner and form as he is indicted, that is, not only of the assault, but of the assault with intent to murder, as charged in this indictment, it is incumbent upon the State to satisfy you from all the evidence in the case, beyond a reasonable doubt, not only that the assault was committed, but also that it was made by the prisoner with the specific felonious intent to murder his said wife. Such intent to murder is absolutely material and essential to be proven in this case before you can find him guilty of the said assault with intent to murder.

An assault is an unlawful attempt by violence to do injury to the person of another, the person making the attempt having the present ability to commit such injury.

As, in addition to the assault, the intent to murder is also charged in this indictment, it therefore is necessary for us to define to you what murder, within the meaning of the law, is.

For you must be satisfied from the evidence, beyond a reasonable doubt, that the prisoner's alleged act (if his wife's death had

actually been caused thereby) would be murder of the first or second degree, and nothing less, before you can render a verdict of guilty of the intent to murder.

To constitute the statutory offense of assault with intent to commit murder, the circumstances must be such as to show that it would have been murder if the assailant had accomplished such intent.

Murder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, under the peace of the State, with malice aforethought, either express or implied.

The chief characteristic of this crime, distinguishing it from every other kind of homicide, and therefore indispensably necessary to be proved, is malice prepense or aforethought. Under the statute law of this State there are two degrees of murder, namely murder of the first, and murder of the second degree. The first is where the crime of murder is committed with express malice aforethought, or in perpetrating or attempting to perpetrate any crime punishable with death ; and the second degree is where the crime of murder is committed otherwise, and with malice aforethought implied by law.

The express malice which constitutes murder of the first degree, is proved by circumstances satisfactorily evidencing a sedate deliberate purpose and formed design to kill another, such as the deliberate selection and use of a deadly weapon, the preparation and use of poison, and the like.

Implied or constructive malice is an inference or conclusion of law from the facts found by the jury.

Therefore murder of the second degree may be proved where it is not satisfactorily shown by the evidence submitted to the jury that the killing was done with a sedate deliberate purpose and formed design to take life, or in perpetrating or attempting to perpetrate any crime punishable with death, but is so shown that it was done suddenly, without justification or excuse, and without any pro-

vocation or without provocation sufficient to reduce the homicide to the grade of manslaughter.

Malice is implied by law from every deliberate cruel act committed by one person against another, no matter how sudden such act may be. For the law considers that he who does a cruel act voluntarily does it maliciously. And whenever the act from which death ensues is proven by the prosecution, unaccompanied by circumstances of justification, excuse or mitigation, the law presumes that the homicide was committed with malice; and it is thereupon incumbent upon the prisoner to show by evidence that the killing was not malicious, and therefore does not amount to murder.

Having explained to you what an assault is, and having also stated to you that in addition to the proof of the assault (if they have proven it to you), the prosecution must show the specific intent to murder the person named in the indictment—that is, to kill her with either express or implied malice aforethought—it becomes necessary for us further to state to you how such intent to murder may be shown to your satisfaction.

The intent to commit murder may be shown by direct evidence of the intent—that is, by the express confession or declaration of the accused that he committed the alleged assault with intent to murder; or, if there be no such direct evidence, the intent to commit murder may be proved by the acts or the conduct of the accused, and other circumstances, from which the jury may naturally and reasonably infer the intent charged. For instance, it is a principle of law that every man must be presumed to intend the natural and probable consequences of his own voluntary or wilful act. So that from the use of a deadly weapon against another, the jury may infer the intent to commit murder, unless the circumstances in the case satisfy you to the contrary. As to the question of the intent to murder, as charged in this indictment, it is for you to say from the evidence before you, whether there is such evidence, taken in connection with all the facts in the case, as will warrant you in inferring that the accused assaulted his wife, Marie G. Di Guglielmo, the

prosecuting witness, with intent to murder her. Such intent, as we have said, being provable by and inferable from the voluntary, unlawful use, in a manner, or under circumstances perilous to human life, or directly tending to great bodily harm, of a loaded pistol, sword, axe, heavy bar of iron, butcher knife, or other weapon which the law considers a deadly weapon, or of any other instrument or missile reasonably likely to take human life when so used.

It is a maxim of law in favor of every accused person that he is presumed to be innocent until the prosecution has shown him to be guilty beyond a reasonable doubt.

It is also an established rule of law that every person of the age of 14 years and upwards is presumed to be mentally capable of committing crime until the contrary is proven ; and the burden is upon the accused, after he has reached the age of 14 years, to prove that he is not mentally capable of committing the crime charged.

In this case the prisoner has sought to show that he was incapable of committing the crime charged, because he was, as he contends, so intoxicated at the time of its alleged commission that he was by reason thereof mentally incapable of forming or entertaining the specific felonious intent to murder, as alleged in this indictment. The law regarding this ground of defense was declared by this Court at the November Term, 1902, in *State vs. Michael Kavanaugh, 4 Pennewill, 131.*

Larceny was the offense charged in that case, but we consider that the law therein announced is also applicable to the crime of assault with intent to murder, as charged in the present indictment.

*Roberts vs. People, 19 Mich., 401 (416).*

The doctrine as stated by this Court in *State vs. Kavanaugh* is as follows :

" The law is well settled, as a general rule, that one who voluntarily intoxicates himself and beclouds his reason cannot set up such condition in excuse or mitigation of a crime committed while

in that condition. The effect of drunkenness upon the mind and upon men's actions when under the full influence of liquor are facts known to everyone, and it is as much the duty of men to abstain from placing themselves in a condition from which such danger to others is to be apprehended as it is to abstain from firing into a crowd, or doing any other act likely to be attended with dangerous or fatal consequences. There would rarely be a conviction for homicide, for instance, if drunkenness avoided responsibility. Few violent crimes would probably be attempted without resorting to liquor both as a stimulant and as a shield, and the very fact, therefore, which shows peculiar malignant deliberation would be interposed as an excuse.

"But although voluntary intoxication constitutes neither excuse for nor palliation of crime, yet in cases in which a specific or particular intent or purpose is an essential or constituent element of the offense, as in the case of larceny, intoxication, even though voluntary, becomes a matter for consideration and is competent evidence on the question whether, by reason thereof, the defendant was incapable of forming or entertaining such an intent or purpose at the time the act was perpetrated. When the nature and commission of the crime are made by law to depend upon the peculiar state and condition of the mind at the time, and with reference to the act done, drunkenness, as a matter of fact affecting such state or condition of the mind, is a proper subject for the consideration of the jury. If the mental status required by law to constitute crime be one of deliberation or premeditation, and drunkenness excludes the existence of such mental state, then the particular crime charged is not excused by drunkenness, but has not in fact been committed. To regard the fact of voluntary intoxication as meriting consideration in such a case is not to hold that drunkenness will excuse crime, but to inquire whether the very crime which the law defines has been in point of fact committed.

"It is manifest that great caution is necessary in the application

of this doctrine, and those whose province it is to decide in such cases should be satisfied from all the facts and circumstances before them, that the unlawful act was committed by the accused when by reason of intoxication his mental condition was such that he did not know that he was committing the crime, and also that no design to do the wrong existed on his part before he became thus incapable of knowing what he was doing.  There is great danger that undue weight will be attached to the fact of drunkenness.  Where it is shown in a criminal case, courts and juries should see that it is used only for the purpose stated and not as a cloak or justification for crime and that it is not feigned, or pretended, nor actually incurred for the purpose of the commission of the particular offense.

"Whether the accused was so drunk at the time of committing the act as to be incapable of forming or entertaining the design or intent in question, is always a conclusion to be drawn by the jury from all the evidence before it.  And the mere fact of intoxication, no matter how complete or overpowering, is not conclusive evidence of the absence of capacity to form an intent to commit a crime. Evidence of intoxication should always be received with great caution and carefully examined in connection with the other proven circumstances

" A person who is intoxicated may nevertheless be capable of deliberation and premeditation, and a drunken man who commits a wrongful act wilfully and premeditatedly is as guilty in the eyes of the law as if he had been sober.  If a person resolves to commit a crime and then drinks to intoxication and commits the act, the fact of intoxication cannot lessen the degree of the offense, because he specifically intended to commit it.  When the specific intent, as in this case before you, is a necessary ingredient of the crime, so long as the defendant is capable of conceiving and entertaining the design, he must be presumed, in the absence of proof to the contrary, to have intended the natural and probable consequences of his act."

So far as we remember the prayers, it only remains for us to say to you, gentlemen, that the State must prove to your satisfaction, beyond a reasonable doubt, the offense charged in this indictment, either the assault with intent to murder, or the simple assault, before you can find a verdict of guilty of either.

A reasonable doubt is not a mere imaginary, whimsical, or even possible doubt of the guilt of the accused, but is such a real and substantial doubt as intelligent and impartial men may reasonably entertain upon a careful consideration of all the relevant facts proven in the case.

We repeat, if you should be unable to find that the prisoner is guilty of the entire crime charged, that is, of the assault with intent to murder, under the law, as we have stated it to you, then you may, if the evidence warrants you, find him guilty of the assault merely.

We now leave the case in your hands to render such verdict as you deem proper under the law and the evidence.

Verdict, guilty.